1  Charles E. Noneman (State Bar No. 84678)
   cnoneman@coxcastle.com
2  Melissa S. Lam (State Bar No. 240045)
   mlam@coxcastle.com
3  COX, CASTLE & NICHOLSON LLP
   2049 Century Park East, 28th Floor
4  Los Angeles, CA  90067-3284
   Telephone:  (310) 277-4222
5  Facsimile:  (310) 277-7889

6  Attorneys for Defendants
   SUNSHINE VILLAGE HOMEOWNERS
7  ASSOCIATION-WALNUT, CHIN-YUH YANG,
   SUNG TIEN CORPORATION, doing business as
8  STC MANAGEMENT

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  JENNIFER GARCIA, an individual,        Case No. CV11 05033 DMG (MANx)

13               Plaintiff,               **DEFENDANTS' MEMORANDUM
                                          OF POINTS AND AUTHORITIES
14       vs.                              IN OPPOSITION TO PLAINTIFF'S
                                          MOTION FOR PRELIMINARY
15  SUNSHINE VILLAGE HOMEOWNERS           INJUNCTION**
    ASSOCIATION-WALNUT, et al.,
16                                        [Filed concurrently with the
               Defendants.               Declarations of Jesus Chua, Chin-Yuh
17                                        Yang, SueAnn Tai, Sam Socher, and
                                          Charles E. Noneman; and Defendants'
18                                        Objections to and Motion to Strike
                                          Portions of Declaration of Jennifer
19                                        Garcia]

20                                        **New Date:      September 9, 2011
                                          Time:           2:00 p.m.
21                                        Ctrm:           7**

22

23

24

25       Defendants Sunshine Village Homeowners Association-Walnut (the

26  "HOA"), Chin-Yuh Yang ("Dr. Yang"), and Sung Tien Corporation, doing business as

27  STC Management ("STC", and together with the HOA and Yang, the "Defendants"),

28

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

63639\4099690v3                          - 1 -        DEFENDANTS' OPP. TO PLAINTIFF'S
                                                      MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 2

I. INTRODUCTION .......................................................................................... 2

II. FACTUAL BACKGROUND .......................................................................... 4

    A.    Plaintiff Owns A Condominium Unit And Two-Car Garage In Sunshine Village ............................................................................. 4

    B.    In 2007, The HOA Board Approved The Placement Of Four Handicapped Parking Spaces Throughout The Development ................. 5

    C.    Sherri Lee Unilaterally, And Without Authorization From The HOA Board, Assigned Exclusive Rights To Handicap Spaces To Plaintiff And Others ............................................................. 6

    D.    Problems With Sherri Lee Escalate - Plaintiff Offers To Give Up Her Assigned Handicapped Space In Order To Oust Ms. Lee From The HOA Board ............................................. 6

    E.    Dr. Yang And Plaintiff Are Elected To The 2010 HOA Board ......................................................................................... 7

III. PLAINTIFF HAS NOT MET HER BURDEN OF SHOWING SHE IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF ............................ 9

    A.    Plaintiff Cannot Satisfy The Heightened Standard Applied To The Mandatory Injunctive Relief Requested In The Motion ....................................................................................... 10

    B.    Plaintiff Has Not Proven A Likelihood Of Success On The Merits Of Her Discrimination Claims .......................................... 11

        1.    Plaintiff's Requested Accommodation For A Reserved Handicapped Parking Space *In Addition To Her Two Parking Spaces* Is Not Reasonable .......................... 12

        2.    Plaintiff's Requested Accommodation For A Reserved Handicapped Parking Space Is Not Necessary ................................................................ 15

    C.    Plaintiff Has Not Proven A Threat Of Immediate Irreparable Harm ......................................................................................... 17

    D.    The Balance Of Equities Do Not Tip In Plaintiff's Favor And The Injunction Is Not In The Public Interest ......................... 18

IV.    THIS COURT SHOULD ORDER THE POSTING OF A BOND IN THE UNLIKELY EVENT THAT IT ISSUES A MANDATORY INJUNCTION .......................................................... 18

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA   63639\4099690v3

- i -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1

V. CONCLUSION ....................................................................................................20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Astralis Condominium Assn v. Secretary, United States Dept. of HUD,*
620 F.3d 62 (1st Cir. 2010) .................................................................. 13, 14

*Bryant Woods Inc., Inc. v. Howard City,*
124 F.3d 597 (4th Cir. 1997) ....................................................................... 12

*City of Los Angeles v. Lyons,*
461 U.S. 95, 103 S.Ct. 1660 (1983) ............................................................ 17

*Dahl v. HEM Pharmaceuticals Corp.,*
7 F.3d 1399 (9th Cir. 1993) ......................................................................... 10

*GoTo.com, Inc. v. Walt Disney Co.,*
202 F.3d 1199 (9th Cir. 2000) ..................................................................... 10

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
174 F.3d 411 (4th Cir. 1999) ....................................................................... 19

*Hovsons, Inc. v. Township of Brick,*
89 F.3d 1096 (3d Cir. 1996) ........................................................................ 11

*Jankowski Lee & Associates v. Cisneros,*
91 F.3d 891 (7th Cir. 1996) ......................................................................... 14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
571 F.3d 873 (9th Cir. 2009) .................................................................... 9, 10

*Mazurek v. Armstrong,*
250 U.S. 968, 117 S.Ct. 1865 (1997) ............................................................ 9

*Meade Johnson & Co. v. Abbott Laboratories,*
201 F.3d 883 (7th Cir. 2000) ....................................................................... 19

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,*
102 F.3d 12 (1st Cir. 1996) ........................................................................... 9

*Southern California Housing Rights Center v. Los Feliz Towers*
*Homeowners Assn. Bd.,*
426 F.Supp.2d 1061 (C.D.Cal.2005) ........................................................... 14

*Sporn v. Ocean Colony Condominium Ass'n,*
173 F.Supp. 2d 244 (D.N.J. Oct. 29, 2001) ....................................... 12, 13, 14

*Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.,*
335 F.3d 235 (3rd Cir. 2003) ....................................................................... 18

*Titan Tire Corp. v. Case New Holland, Inc.,*
566 F.3d 1372 (Fed. Cir. 2009) ..................................................................... 9

*Tom Doherty Assocs. Inc. v. Saban Entertainment, Inc.,*
60 F.3d 27 ...................................................................................................... 10

*University of Hawaii Professional Assembly v. Cayetano,*
183 F.3d 1096 (9th Cir. 1999) ..................................................................... 17

*Weinberger v. Romero-Barcelo,*
456 US 305, 102 S.Ct. 1798 (1982) ............................................................. 18

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA     63639\4099690v3

- iii -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Winter v. Natural Resources Defense Council, Inc.,*
   555 U.S. 7, 129 S.Ct. 365 (2008) .................................................................. 9, 17

*Wisconsin Community Services, Inc. v. City of Milwaukee,*
   465 F.3d 737 (7th Cir. 2006) ..................................................................... 11, 16

**Statutes**

24 C.F.R. § 100.204(a) ..................................................................................... 11

24 C.F.R. § 100.205(e)(1)(ii) ........................................................................... 16

42 U.S.C. § 3604(f)(3)(B) ................................................................................ 11

Cal. Govt. Code  §  12927(c)(1) ....................................................................... 11

Fed. R. Civ. Proc. 65(c) ................................................................................... 18

**Other Authorities**

Fair Housing Act Design Manual, § 2.25 (1998) .............................................. 16

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
LOS ANGELES, CA      63639\4099690v3

- iv -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1  respectfully submit the following Opposition to Plaintiff Jennifer Garcia's ("Plaintiff").

2  Motion for Preliminary Injunction (the "Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

6        Plaintiff seeks rights which the law does not afford and no court has ever

7  awarded – namely, exclusive rights to common area parking spaces in addition to the

8  two parking spaces which she already owns.  The law is clear that Plaintiff is entitled to

9  parking which amounts to a "reasonable accommodation" where it is reasonable and

10  necessary to provide her with the equal opportunity to use and enjoy her home.

11  Plaintiff is not, however, entitled to preferential and exclusive access to common area

12  parking that will take away others' collective rights to such parking.  Accordingly,

13  Plaintiff is not entitled to any injunctive relief because she cannot show that she is

14  likely to prevail on the merits of her action.

15        In a transparent attempt to garner this Court's sympathy, Plaintiff has

16  attempted to paint a picture of Defendants' mistreatment and complete disregard of

17  Plaintiff's handicap status, ultimately resulting in the removal of her exclusive right to a

18  reserved handicapped parking space, and leaving her without any viable parking

19  options.  Nothing can be further from the truth.  Upon taking a step back from the

20  emotional current of this dispute, the controlling law and the evidence presented clearly

21  demonstrate that Plaintiff cannot prevail on the merits of this action because:

22        (i)      The requested parking accommodation is not reasonable.  In

23  addition to maintaining the right to use the two parking spaces she owns, Plaintiff seeks

24  a mandatory injunction which will convert two common area parking spaces to a single

25  handicapped parking space reserved for her sole and exclusive use.  As an initial matter,

26  and contrary to Plaintiff's assertions, at no time did Defendants "formally grant" her a

27  handicapped parking space reserved for her exclusive use.  Rather, the designation as a

28  reserved spot was the result of an unapproved, unilateral act of a rogue tyrannical

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA     63639\4099690v3

- 2 -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1    president of the HOA Board of Directors (the "HOA Board"), who was later accused of

2    corruption and embezzlement.

3              The common area spaces are unassigned parking spots owned in common

4    by all of the homeowners at Sunshine Village for the use and benefit of the residents

5    and their guests.  Granting the injunction as requested will thus effectively diminish the

6    property rights of the remaining 124 unit owners at the development, while providing

7    preferential treatment to Plaintiff.  No case interpreting the rights of a condominium

8    owner under the Fair Housing Act ("FHA") (or California's Fair Employment and

9    Housing Act or Unruh Act) has gone so far as awarding a handicapped owner the right

10   to exclusive access to public space while permitting the owner to keep his or her

11   existing parking spaces.  To do so would turn the very purpose of the FHA on its head,

12   since accommodations that go above and beyond affording equal opportunities to

13   handicapped residents, by providing special treatment to handicapped individuals, are

14   not supported by the FHA.

15              (ii)    In addition, the requested parking accommodation is not necessary

16   to provide Plaintiff with the equal opportunity to use and enjoy her residence.  Plaintiff

17   owns a own private, two-car garage that is located behind her home, and is next to the

18   two common area parking spaces that she now seeks for her exclusive use.  The

19   rationale behind the FHA accommodation requirements is that without a parking space

20   close to the residence, a handicapped individual's use and enjoyment of a home is

21   diminished.  Here, however, the spaces Plaintiff already owns are as close to her home

22   as possible, and are only a few feet from the common area spaces she seeks in this

23   lawsuit.  The path that Plaintiff currently takes from the garage to her front door,

24   moreover, is virtually identical to the path she will take from the proposed parking

25   space.  Further, the dimensions of the garage and the garage door exceed the standards

26   required under the rules and regulations governing accessibility under the FHA.

27              Plaintiff asks this Court to award relief that exceeds that which is required

28   by the FHA and state laws governing reasonable accommodations, and improperly and

1   unfairly violates the property rights of third parties.  Accordingly, Plaintiff is <u>not</u> likely

2   to prevail on the merits, is thus not entitled to a preliminary injunction.  Defendants

3   therefore respectfully request that the Court deny the Motion in its entirety.

## II.

## FACTUAL BACKGROUND

**A.    Plaintiff Owns A Condominium Unit And Two-Car Garage In Sunshine Village**

8                Sunshine Village is a residential community located in Rowland Heights,

9   California.  Declaration of Chin-Yuh Yang ("Yang Decl."), ¶ 2.  The community was

10  incorporated in 1965 and consists of 125 one and two-story residential units.  *Id.*, ¶ 4.

11  Each unit includes a detached, covered, two-car garage.  *Id.*  In addition, Sunshine

12  Village includes common areas consisting of a clubhouse, swimming pool, other areas,

13  and 64 unassigned parking spaces (the "Common Area Parking Spaces"), all of which

14  are collectively owned in common by the owners of the units (*i.e.* a 1/125 interest) and

15  controlled by the HOA Board for the benefit of all owners.  *Id.*  The Common Area

16  Parking Spaces are unassigned, and are available for use by the homeowners and their

17  guests on a first come, first served basis.  *Id.*, ¶ 5.  However, no one can park in a

18  Common Area Parking Space for longer than 24 hours.  *Id.*  Given the limited number

19  of parking spaces, parking can be difficult to find at Sunshine Village, particularly on

20  Wednesday evenings when residents and visitors must move their cars from certain

21  streets for street cleaning on Thursday mornings.  *Id.*

22                Plaintiff owns a residential unit and garage in Sunshine Village located at

23  1655-A Greencastle Avenue, where she lives with her husband and her two minor

24  children.  Declaration of Jennifer Garcia ("Garcia Decl."), ¶¶ 2-3, 6, submitted with

25  Plaintiff's moving papers.  She has lived there for over 15 years.  *Id.*, ¶ 3.  Her two-car

26  garage is located directly behind her home, and its dimensions are 19'-6" wide x 19'-3"

27  deep with a 15'-10" door.  Declaration of Charles E. Noneman ("Noneman Decl."), ¶ 3,

28  Ex. 7; Declaration of Sam Socher ("Socher Decl.), ¶ 2.  There are two Common Area

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA   63639\4099690v3

- 4 -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   Parking Spaces next to the garage.  Noneman Decl., ¶ 3; Yang Decl., ¶ 6.  An alleyway

2   runs in front of Plaintiff's garage and the two Common Area Parking Spaces, and

3   extends to the street.  Yang Decl., ¶ 6; Noneman Decl, ¶ 3, Ex. 7.

4          There are two ways in and out of Plaintiff's garage.  At the back of the

5   garage, there are two steps that lead to a door and patio that leads directly to the back

6   door of Plaintiff's residence.  Yang Decl., ¶ 7; Noneman Decl, ¶ 3, Ex. 9.  As the

7   owner of the unit and garage, Plaintiff is entitled under the CC&Rs of the HOA to make

8   alterations to the interior of her property at her own expense.  Yang Decl., ¶¶ 3, 7,

9   Ex. 3.  Pursuant to these provisions, Ms. Garcia could construct a ramp over the two

10  steps in her garage to accommodate her wheelchair.  Plaintiff may also enter and exit

11  the garage through the front, and go around the garage by the two Common Area

12  Spaces, to get to the front door of her unit.  *Id.*, ¶ 7.

13         In addition to using the garage for storage purposes, Plaintiff and her

14  family park two vehicles in the garage.  *Id.*, ¶ 8.  One is a truck that is driven by

15  Plaintiff's husband.  *Id.*  The other is a sedan that is not used on a daily basis.  *Id.*

16  **B.   In 2007, The HOA Board Approved The Placement Of Four Handicapped**

17  **Parking Spaces Throughout The Development**

18         In the summer of 2007, the HOA Board was considering certain upgrades

19  to the clubhouse.  Declaration of Jesus Chua ("Chua Decl."), ¶ 3.  As part of this

20  process, the HOA Board looked into ways of making the clubhouse handicap

21  accessible, including the installation of ramps, upgrades to the restrooms, and the

22  placement of handicapped parking near the clubhouse and throughout the development.

23  *Id.*

24         On July 25, 2007, the HOA Board approved the designation of four

25  handicapped parking spaces throughout the development.  *Id.*, ¶ 4, Ex. 1.  The HOA

26  Board ordered signs for the spaces and agreed to notify the homeowners of the newly-

27  marked handicapped parking spaces.  *Id.*  These parking spaces were designated for the

28  use of homeowners and guests with the appropriate handicap placards.  *Id.*  However,

1  none of these handicapped spaces were specifically assigned by the HOA Board to any

2  homeowners for their exclusive use.  *Id.*[1]

3  **C.**   **Sherri Lee Unilaterally, And Without Authorization From The HOA Board,**

4         **Assigned Exclusive Rights To Handicap Spaces To Plaintiff And Others**

5         Also in the summer of 2007, after the President of the HOA Board passed

6  away, the HOA Board appointed its Secretary, Sherri Lee, to serve as President.  Chua

7  Decl., ¶ 5.  As time progressed, Ms. Lee began wielding more and more power over the

8  HOA Board, and Lee, unbeknownst to the HOA Board members, and without HOA

9  Board approval or notice to the residents, unilaterally began assigning handicapped

10  spaces to residents for their sole and exclusive use.  *Id.*  One such unilateral assignment

11  was made to Plaintiff.  *Id.*, ¶ 5.  Ms. Lee arranged for the posting of a sign that read

12  "Reserved for Lot 33" at the handicapped parking space next to Plaintiff's garage.  *Id.*

13  At no time in the summer of 2007 or thereafter in any of the HOA Board meetings was

14  the issue of Plaintiff's exclusive right to use the handicap space next to her garage ever

15  discussed or approved.  *Id.*, ¶ 6.

16  **D.**   **Problems With Sherri Lee Escalate - Plaintiff Offers To Give Up Her**

17         **Assigned Handicapped Space In Order To Oust Ms. Lee From The HOA**

18         **Board**

19         By September of 2009, corruption, misuse and stealing of HOA funds by

20  the HOA Board had been discovered, and residents, including Plaintiff and Dr. Yang,

21  sought to obtain information and documents from the HOA Board President, Sherri

22  Lee, who was believed to be the HOA Board member primarily responsible for the

23  misuse and stealing of HOA funds.  Yang Decl., ¶ 9.  Accordingly, Plaintiff, Dr. Yang,

24  and other homeowners worked together to seek election to the HOA Board and to oust

25  _____

26  [1] While Plaintiff asserts in her moving papers that she was "formally granted an

27  <u>assigned</u> handicap parking space" (Motion, Memo of P's & A's, p.2) (emphasis added),
    this assertion is not supported by her own declaration, which is silent on the issue of an

28  "assigned" space.  Garcia Decl., ¶ 7.

1   Ms. Lee from her position at the upcoming annual election held in October 2009.  *Id.*

2   Plaintiff's relationship with Ms. Lee was strained, and Plaintiff believed that Ms. Lee

3   was wrongfully using Plaintiff's handicapped parking against her in order to prevent

4   Plaintiff and her husband from disclosing information about Ms. Lee's

5   "embezzlement."  *Id.*, ¶ 10, Ex. 4.

6          Although Dr. Yang felt that the procedure for assigning the reserved

7   handicapped spaces was improper, and he, along with other residents, was concerned

8   about the diminished rights of the homeowners' interests in the Common Area Parking

9   Spaces, he and Plaintiff remained cordial during this time, and Dr. Yang was willing to

10   do what he could to help elect Plaintiff to the HOA Board and prevent Ms. Lee from

11   being re-elected.  *Id.*, ¶ 11.  On September 5, 2009, Plaintiff emailed Dr. Yang and

12   offered a "compromise" wherein Dr. Yang and his "people" would succeed in getting

13   Ms. Lee off the HOA Board, and in return Plaintiff agreed to remove her reserved

14   handicapped space.  *Id.*, ¶¶ 10-11, Ex. 4.  Dr. Yang agreed to this proposal.  *Id.*, ¶ 7.  In

15   this email, Plaintiff indicated that she could remove the "lousy space" in one day, and

16   acknowledged that Ms. Lee deliberately gave out a number of handicapped parking

17   spaces "out of spite." *Id.*, ¶ 10, Ex. 4.

18   **E.     Dr. Yang And Plaintiff Are Elected To The 2010 HOA Board**

19          In October 2009, Dr. Yang and Plaintiff, along with three other residents,

20   were elected to the 2010 HOA Board.  *Id.*, ¶ 12.  Sherri Lee was not reelected.  *Id.*

21   Dr. Yang became President, and Plaintiff Vice President.  *Id.*   Despite Plaintiff's offer

22   to "compromise," however, she did not remove her improperly assigned reserved

23   handicapped parking space.  *Id.*  In November 2009, STC was hired as the new property

24   manager of the HOA.  Declaration of SueAnn Tai, ¶ 1.

25          Plaintiff attended the first and second HOA Board meetings on January 15,

26   2010 and February 19, 2010. Yang Decl., ¶ 13.   During these first meetings, the HOA

27   Board members discussed various matters that Sherri Lee had abused during her tenure,

28   including the issue of the unilaterally assigned handicapped parking, and agreed to send

1   out a survey to all residents asking for their opinion on these issues. *Id.*, ¶ 13.  Plaintiff

2   did not agree with sending out the survey. *Id.*  Unfortunately, from there, tension began

3   to build between Plaintiff and other members of the HOA Board. *Id.*  After becoming

4   Vice President, Plaintiff subsequently sent Dr. Yang a letter in which she indicated that

5   she was contemplating resigning her position as Vice President. *Id.*, ¶ 14, Ex. 5.  At the

6   February 19, 2010 meeting, at which Plaintiff was present, it was determined that the

7   next meeting would be held on March 18, 2010. *Id.*, ¶ 15 .  At the March 18, 2010

8   meeting, Plaintiff's husband attempted to physically harm Dr. Yang by charging at him

9   at the end of the meeting and verbally abused Dr. Yang with racial slurs in reference to

10  his Chinese heritage. *Id.*

11        Plaintiff was never barred from attending any HOA Board meetings, and

12  was always given assistance when meetings were held at the clubhouse, which did not

13  contain handicap accessible ramps. *Id.*, ¶ 16.[2]  No other HOA Board meetings were

14  held until June 29, 2010, at which time, in accordance with the By-Laws of the HOA,

15  Plaintiff was removed as Vice President from the HOA Board. *Id.*

16        The HOA Board received numerous complaints from homeowners

17  concerning Ms. Garcia's handicapped parking space which was assigned for her

18  exclusive use, as well as other spaces that were similar to hers. *Id.*, ¶ 17.  Residents

19  were concerned because it did not seem fair that certain residents were entitled to

20  exclusive use of certain Common Area Parking Spaces, particularly since there are only

21  a limited number of Common Area Parking Spaces for all to use, and because residents

22  were not given any notice of the unilateral assignment of these spaces. *Id.*  In response

23  to these complaints, at the HOA Board meeting on December 13, 2010, the HOA Board

24  decided to remove all handicapped parking spaces after providing a 30-day notice sent

25  _____

26  [2] Plaintiff's assertion that she was intentionally excluded from meetings is without

27  foundation.  Garcia Decl., ¶ 14.  There were no meetings following her husband's

    outburst at the March 18, 2010 meeting – until the June 29, 2010 meeting, when she

28  was removed as an HOA Board member.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA    63639\4099690v3

- 8 -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1  to all homeowners. *Id.* Plaintiff's assigned handicapped parking space was removed in

2  January 2011. Garcia Decl., ¶ 18.

### III.

### PLAINTIFF HAS NOT MET HER BURDEN OF SHOWING SHE IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

6  Injunctive relief is an "extraordinary remedy that may only be awarded

7  upon a <u>clear</u> showing that the plaintiff is entitled to such relief." *Winter v. Natural*

8  *Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 375-76 (2008)

9  (emphasis added), *citing Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865

10  (1997). Accordingly, a preliminary injunction will be granted in favor of a plaintiff

11  only if he or she can establish each of the following: (1) the likelihood that plaintiff

12  will succeed on the merits; (2) that plaintiff is likely to suffer irreparable harm in the

13  absence of preliminary relief; (3) that the balance of equities tips in plaintiff's favor;

14  and (4) that an injunction is in the public interest. *Winter,* 555 U.S at 20.

15  The first prong, the "likelihood of success," is the "main bearing wall of

16  the four factor framework," and plaintiff bears the burden of proving this factor in order

17  to obtain a preliminary injunction. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,* 102

18  F.3d 12, 16 (1st Cir. 1996). Some courts have found that the "likelihood" success on

19  the merits requires that plaintiff establish a better than 50 percent chance of prevailing

20  on the merits by proving that success on the merits is "more likely than not." *Titan Tire*

21  *Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009). Here,

22  Plaintiff's Motion fails because it does not meet the first element.

23  Further, as discussed in more detail below, because Plaintiff seeks a

24  mandatory injunction, Plaintiff's request for a preliminary injunction is subject to a

25  heightened review that requires this Court to closely scrutinize each requirement for

26  injunctive relief. Applying the above-factors to the case at hand, it is clear that Plaintiff

27  cannot overcome this substantial hurdle, and Plaintiff's Motion must be denied.

28

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA    63639\4099690v3

- 9 -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

A.     **Plaintiff Cannot Satisfy The Heightened Standard Applied To The Mandatory Injunctive Relief Requested In The Motion**

Mandatory injunctions are "particularly disfavored" and will not be granted unless <u>extreme or very serious harm</u> will result if the injunction is not issued. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (emphasis added).  As such, a request for the issuance of a mandatory injunction is "subject to heightened scrutiny and should not be issued unless the facts and law <u>clearly favor the moving party</u>."  *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (emphasis added).   Injunctive relief that alters the status quo is also subjected to this heightened standard.  *Tom Doherty Assocs. Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 32-33.  "Status quo" means the last uncontested status that preceded the pending controversy.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).

An injunction is mandatory if it orders a party to "take action."  *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.  Here, Plaintiff has requested that the Court order that Defendants create a reserved handicapped parking space next to her unit.  Plaintiff requests an order directing Defendants to do something.  Plaintiff's contention that the issuance of the preliminary injunction will simply "restore" the status quo is patently incorrect, because as the declarations submitted in support of Defendants' opposing papers establish, at no time did the HOA Board "formally grant," or otherwise approve or ratify Plaintiff's exclusive use of a handicapped parking space next to her unit.  Rather, the designation as a reserved spot was the result of an *unapproved*, unilateral act of a rogue president of the HOA Board, who was later accused of stealing money from the HOA and ousted from the HOA Board.  Further, in this case, the "status quo" dates back to early 2007, when Plaintiff sought assistance from Disability Rights Advocates, and was pressing for a reserved handicapped parking space next to her unit.  That is when Plaintiff first contested her right to a handicapped parking space, and therefore the last "uncontested" status preceding the present controversy.

1   Plaintiff clearly seeks a mandatory injunction that will alter the status quo,

2   and therefore is subject to the heightened scrutiny.  Plaintiff has not met, and cannot

3   meet, this higher showing, particularly since, as discussed below, Plaintiff cannot even

4   establish the likelihood of prevailing on the merits of her discrimination claim.

5   **B.    Plaintiff Has Not Proven A Likelihood Of Success On The Merits Of Her**

6   **Discrimination Claims**

7   The gravamen of Plaintiff's federal and state discrimination claims under

8   the FHA and the California Fair Employment and Housing Action ("FEHA"), stems

9   from her allegation that Defendants have unlawfully discriminated against Plaintiff by

10  failing to provide her with a "reasonable accommodation" in the form of a reserved

11  handicapped parking space next to her garage.  Under the FHA, discrimination of a

12  handicapped individual includes:

13  "the refusal to make reasonable accommodations in rules

14  policies, practices, or services, <u>when such accommodations</u>

15  <u>may be necessary to afford such person equal opportunity to</u>

16  <u>use and enjoy a dwelling.</u>"

17  *See* 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204(a) (emphasis added).  The

18  definition of discrimination under FEHA is virtually identical.  *See* Cal. Govt. Code

19  § 12927(c)(1).[3]

20  The elements of an accommodation claim under the FHA are twofold.

21  *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir.

22  _____

23  [3] § 12927(c)(1) provides: "Discrimination" . . . "includes refusal to make reasonable

24  accommodations in rules, policies practices, or services when these accommodations

25  may be necessary to afford a disabled person equal opportunity to use and enjoy a

    dwelling."  Because these standards are essentially identical, and are also substantially

26  similar to the standard set forth in the Unruh Act, for purposes of this Motion,

27  Defendants will only address Plaintiff's FHA claims.  Plaintiff's contention that FEHA

    provides greater protection for Plaintiff and therefore makes her more likely to succeed

28  on the merits is unsubstantiated.

1  2006).  First, the plaintiff must prove that the requested accommodation is <u>reasonable</u>,

2  which is "highly fact-specific, requiring a case-by-case determination." *Id.; Hovsons,*

3  *Inc. v. Township of Brick,* 89 F.3d 1096, 1104 (3d Cir. 1996).  Second, the plaintiff

4  must establish that the requested accommodation is <u>necessary</u>, meaning that, without

5  the accommodation, the plaintiff will be denied an equal opportunity to obtain the

6  housing of her choice.  *Wisconsin Community Services, Inc.,* 465 F.3d at 749.  Plaintiff

7  cannot show a likelihood of satisfying either prong.

8        1.    <u>Plaintiff's Requested Accommodation For A Reserved Handicapped</u>

9             <u>Parking Space *In Addition To Her Two Parking Spaces* Is Not</u>

10            <u>Reasonable</u>

11       While the FHA entitles a handicapped resident to an *equal* opportunity to

12 use and enjoy a dwelling, it does <u>not</u> permit accommodations that "'<u>extend a preference</u>

13 <u>to handicapped residents [relative to other residents]. . . .</u>'"  *Sporn v. Ocean Colony*

14 *Condominium Ass'n,* 173 F.Supp.2d 244, 250-51 (D.N.J. Oct. 29, 2001) (emphasis

15 added); *see also Bryant Woods Inc., Inc. v. Howard City,* 124 F.3d 597, 604 (4th Cir.

16 1997) (the requirement of even-handed treatment of handicapped persons does not

17 include affirmative action by which handicapped persons would have a greater

18 opportunity than nonhandicapped persons.)  Thus, where handicapped residents request

19 a reserved handicapped parking spot, <u>but also seek to keep their current parking spaces</u>,

20 courts have found that such requested accommodations are unreasonable and

21 insufficient to satisfy a discrimination claim under the FHA.

22       In *Sporn,* a handicapped, wheelchair-bound condominium resident

23 requested a handicapped parking space adjacent to the wheelchair accessible entrance

24 to the condominium.  173 F.Supp.2d at 248.  In response, the homeowner's association

25 adopted a "Handicapped Parking Policy," in which it offered to provide residents with a

26 handicapped parking space closer to the condominium, so long as the resident receiving

27 the space agreed to "trade in their deeded parking space for an Association owned space

28 closer to the building entrance." *Id.* at 250.  Sporn refused to give up his non-

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA    63639\4099690v3

- 12 -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   handicapped, deeded parking space, and instead brought a claim against the

2   homeowner's association for, *inter alia*, discrimination under the FHA for failure to

3   provide a reasonable accommodation. *Id.*

4          The court found that Sporn could not prevail on his discrimination claim,

5   because the Parking Policy constituted a reasonable accommodation that "[o]n its face

6   [] grants the same rights to handicapped tenants as it does non-handicapped residents."

7   *Id.* Further, comments made by Sporn revealed that he did not need both spaces for

8   reasons related to his handicap. *Id.* Accordingly, the court found that his request for

9   reasonable accommodation was really a request for "accommodation coupled with a

10  demand for special treatment," which does not provide the basis for a discrimination

11  claim under the FHA. *Id.* (further noting that the "FHA only creates a right to a

12  'reasonable accommodation,' it 'does not create a right to an assigned handicapped

13  space.'")

14          In *Astralis Condominium Assn v. Secretary, United States Dept. of HUD*,

15  620 F.3d 62 (1st Cir. 2010), the complaining parties owned a condominium unit and

16  two parking spaces which were located 230 feet from the entrance to their unit. *Id.* at

17  64. The condominium complex also had unallocated, time-limited parking spaces

18  maintained by the homeowner's association, which included handicapped spaces, that

19  were to be used by residents and visitors. *Id.* The unit owners had hip and leg

20  problems, and had difficulty walking. *Id.* at 65. They requested that the homeowner's

21  association grant them exclusive, non-time limited use of the two handicapped spaces

22  closest to their unit. *Id.* The First Circuit upheld and enforced the order of an

23  administrative law judge, who found that the homeowner's association violated the

24  FHAA[4] by refusing to grant a reasonable accommodation, and directed that the

25

26  _____

27  [4] The FHA passed as Title VIII of the Civil Rights Act of 1969 and was amended by the
    Fair Housing Amendments Act (FHAA) of 1988. Both the FHA and FHAA are found

28  at 42 U.S.C. § 3601, *et seq.*

1   handicapped owners receive exclusive use of the two handicapped spaces at issue

2   **provided that they agree to surrender their originally assigned spaces.** *Id.* at 65.

3   Although Plaintiff cited this case in her moving papers, reference to this important

4   caveat is conspicuously missing.

5        Here, Plaintiff seeks to convert two of the Common Area Parking Spaces

6   that are currently available for use by all homeowners and guests of Sunshine Village,

7   to one handicapped parking space to be reserved for her sole and exclusive use.  As in

8   *Sporn,* she seeks this handicapped parking space <u>in addition</u> to the deeded parking

9   spaces she currently owns in her garage.  Also as in *Sporn*, Plaintiff has provided no

10  evidence establishing that she needs to maintain her deeded parking spaces for reasons

11  related to her handicapped status.  To the contrary, Plaintiff contends (and as discussed

12  below, Defendants dispute) that the spaces she currently owns are "too narrow" and not

13  sufficient to accommodate her disability.

14       Plaintiff's requested accommodation is thus a prime example of an

15  "accommodation coupled with a demand for special treatment," that does <u>not</u> support

16  her claim for discrimination under the FHA.  Unlike the Handicapped Parking Policy in

17  *Sporn*, or the HUD order in *Astralis,* Plaintiff's requested relief does not constitute a

18  reasonable accommodation under the FHA because it does not grant the same rights to

19  handicapped tenants as it does non-handicapped residents.  Instead, it will provide

20  preferential treatment to Plaintiff by giving her access to her own garage spaces *in*

21  *addition to* a reserved handicapped parking space, at the direct expense of the non-

22  handicapped residents' interests in the Common Area Parking Spaces.

23       Further, the cases cited by Plaintiff in the Motion, which found that

24  landlords may be required under the FHA to provide a handicapped tenant with a

25  reserved parking space adjacent to the tenant's dwelling are distinguishable, because in

26  each of those cases, the rights of the non-handicapped tenants were not diminished,

27  because the number of "open" public spaces would remain the same even after the

28  accommodation was provided.  *See Jankowski Lee & Associates v. Cisneros*, 91 F.3d

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA    63639\4099690v3

- 14 -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

891 (7th Cir. 1996) (finding that reserved parking space closest to plaintiff's unit for plaintiff with multiple sclerosis who had difficulty walking long distances and controlling his bladder, was a reasonable accommodation where parking for all tenants was on a first come, first served basis; plaintiff was placed on equal footing with other tenants); *Southern California Housing Rights Center v. Los Feliz Towers Homeowners Assn. Bd.*, 426 F.Supp.2d 1061 (C.D.Cal.2005) (disabled condominium owner offered to trade in her deeded parking space in exchange for use of either the manager's space or a guest space that could accommodate her handicapped equipped van; court denied her motion for summary judgment because there was a material dispute of fact as to whether this was necessary for use and enjoyment of the dwelling.)

Plaintiff has cited no case – and Defendants have found no case – in which a court held that a homeowner's association must assign the exclusive right to use a common area parking space to a disabled tenant for his or her sole use as a reasonable accommodation.  This is not a case of merely "shuffling" parking spaces.  In this case, what Plaintiff requests is the exclusive use of two Common Area Parking Spaces which are owned by the HOA for the common benefit of all residents (all residents owning 1/125 of the spaces), effectively resulting in a transfer of a 1/32 property interest in the Common Area Parking Spaces (2 of the 64 Common Area Parking Spaces) to Plaintiff at the expense of the other owners.

2.    Plaintiff's Requested Accommodation For A Reserved Handicapped Parking Space Is Not Necessary

Even if Plaintiff could establish that her requested accommodation was somehow reasonable – and it is not – she still would not likely prevail on her discrimination claims because she cannot show that a reserved handicapped parking space that is right next to her two-car garage is somehow necessary to afford her the equal opportunity to use and enjoy her home.  The FHA does not require an accommodation wherever convenient or desired, but only where necessary.  *Sporn,* 173 F. Supp.2d at 249.

1   First, Plaintiff's conclusory statement that the garage is "too narrow" to

2   allow her to transfer to and from her husband's truck, or for Access Services to deploy

3   a ramp, does not prove that the reserved space next to her garage is "necessary" to

4   afford her equal access to use and enjoy her home.  How narrow is too narrow?

5   Plaintiff provides no measurements of the space she purportedly needs to safely load

6   and unload.  Given the fact that the reserved handicapped space she seeks will be

7   created by converting *two* parking spaces, however, it is highly unlikely that her two car

8   garage does not provide sufficient space for her needs.  In fact, the measurements of her

9   garage, *i.e.* 19'-6" wide x 19'-3" deep with a 15'-10" garage door (Socher Decl. ¶ 2),

10  exceed the requirements in the Fair Housing Act Design Manual by five feet, which

11  recommend that garages be at least approximately 14'2" wide, with at least a 10'0"

12  wide garage door in order to comply with the FHA.  *See* 24 C.F.R. § 100.205(e)(1)(ii);

13  Fair Housing Act Design Manual, § 2.25 (1998).

14  The fact that Plaintiff may be using part of the garage for storage,

15  moreover, or that Plaintiff may need to remove one of the cars or install a ramp over the

16  two stairs, does not support the necessity of the additional  handicapped space.  Plaintiff

17  is entitled to an equal opportunity, not preferential or special treatment.  The "'equal

18  opportunity' element limits the accommodation duty so that not every rule that creates a

19  general inconvenience or expense to a disabled individual needs to be modified.

20  Instead, the statute requires only accommodations necessary to ameliorate the effect of

21  the plaintiff's disability so that she may compete equally with the non-disabled in the

22  housing market." *Wisconsin Community Services, Inc.,* 465 F.3d at 749.

23  Second, Plaintiff's claims that it is necessary to have a reserved

24  handicapped space next to her garage because otherwise she will be faced with "real

25  and imminent danger" by being forced to load and unload in a lane of traffic next to her

26  garage, and because it is dangerous for her younger child who is "not able to appreciate

27  the danger of incoming moving vehicles," is equally unpersuasive.  The requested

28  reserved handicapped space is literally next to Plaintiff's two car garage.  The "lane of

1   traffic" Plaintiff describes runs right by the proposed parking space <u>and</u> the garage.  *See*

2   Yang Decl., ¶ 6; Noneman Decl., ¶ 3, Ex. 7.  The danger to her child of running in to

3   "traffic" is substantially the same whether Plaintiff unloads in front of her garage or in

4   the requested parking spaces right next to the garage.  Further, the "safest" alternative

5   would be for Plaintiff to load and unload <u>in her garage</u>, and there is no showing why

6   she cannot use her garage for this purpose.

7            Plaintiff has not provided any evidence of any actual physical injury or

8   danger that she has suffered due to her inability to have a reserved handicapped space.

9   Further, the path that Plaintiff must take from the garage and from the requested

10  handicapped space is also virtually identical.  In short, Plaintiff has failed to provide a

11  shred of evidence that remotely supports the necessity of the requested accommodation.

12  Plaintiff already has two parking spaces that are close to her residence – in fact, they

13  are the closest.  The use and enjoyment of her home is not diminished without the

14  requested assigned handicapped space.

15  **C.    Plaintiff Has Not Proven A Threat Of Immediate Irreparable Harm**

16           A plaintiff seeking an injunction based on an alleged past wrong must

17  show there is a real and immediate threat that he or she will be wronged again.  "Past

18  exposure to illegal conduct does not in itself show a present case or controversy

19  regarding injunctive relief."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.

20  Ct.1660 (1983) (internal quotes omitted).

21           The only "irreparable injury" Plaintiff claims she will suffer are past

22  allegations of harassment from Dr. Yang, and purported retaliation related to her

23  participation on the HOA Board.  All of these wrongs have already occurred, and

24  Plaintiff has failed to establish any real or immediate threat that she will be "injured"

25  again.  Indeed, Plaintiff is no longer even on the HOA Board, and none of these so-

26  called injuries are remotely related to harm that will occur if she does not receive the

27  requested assigned handicapped parking space.

28

**D.**     **The Balance Of Equities Do Not Tip In Plaintiff's Favor And The Injunction Is Not In The Public Interest**

To determine which way the balance of hardship tips, the court must identify the possible harm caused by the issuance of the preliminary injunction against the possibility of harm caused by not issuing such relief. *See University of Hawaii Professional Assembly v. Cayetano*, 183 F.3d 1096 (9th Cir. 1999). In addition, courts "'pay particular regard to the public consequences in employing the extraordinary remedy of injunction.'" *Winter*, 555 U.S. at 24, *citing Weinberger v. Romero-Barcelo*, 456 US 305, 312, 102 S. Ct. 1798 (1982). As demonstrated above, Plaintiff has failed to establish that she will incur any harm in the absence of preliminary injunctive relief. Nor has Plaintiff established that the requested accommodation is necessary to provide her with the equal opportunity to use and enjoy her home. On the other hand, in addition to the monetary burden of having to install a handicapped parking space next to Plaintiff's garage, the issuance of the preliminary injunction will unfairly diminish the property rights of third parties, by taking away two Common Area Parking Spaces that would otherwise be available for the residents and guests of the other 124 units at Sunshine Village. Defendants are the HOA, its President and its management company, all of which represent the interests of these homeowners who will be negatively impacted by the issuance of the injunction. Accordingly, the balance of equities do not tip in Plaintiff's favor, and the issuance of the injunction would not further the public's interest.

**IV.**

**THIS COURT SHOULD ORDER THE POSTING OF A BOND IN THE UNLIKELY EVENT THAT IT ISSUES A MANDATORY INJUNCTION**

If an injunction issues, a bond which will cover all damages Defendants will sustain if it is later determined that they were wrongfully enjoined, is required:

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA     63639\4099690v3

- 18 -

DEFENDANTS' OPP. TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1    amount that the court considers proper to pay the costs and

2    damages sustained by any party found to have been

3    wrongfully enjoined or restrained."

4  Fed. R. Civ. Proc. 65(c).

5        The sum posted as a security generally constitutes the maximum that may

6  be recovered by a wrongfully restrained party. *Sprint Communications Co. L.P. v. CAT*

7  *Communications Int'l, Inc.*, 335 F.3d 235, 240 (3rd Cir. 2003).  Therefore, when setting

8  the amount of the bond, courts have found that courts should err on the high side, since

9  setting the amount of the bond too low may result in irreparable injury to the party

10 wrongfully enjoined. *Meade Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 888

11 (7th Cir. 2000).  Further, although the amount of the bond is discretionary, courts have

12 found that the failure to require a bond upon the issuance of a preliminary injunction is

13 reversible error. ("Although the district court has discretion to set the bond amount 'in

14 such sum as the court deems proper,' it is not free to disregard the bond requirement

15 altogether.") *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir.

16 1999) (internal citations omitted).

17        Here, contrary to Plaintiff's claims that Defendants will suffer no injury if

18 the injunction is found wrongful, Defendants' damages are very real and measurable.

19 Specifically, in the unlikely event that the mandatory preliminary injunction is issued,

20 Defendants will be required to bear the costs of converting the two Common Area

21 Parking Spaces next to Plaintiff's garage to a single handicapped parking space, at a

22 cost of $1,437.00. *See*, Tai Decl., ¶ 6, Ex. 6.  Should it later be determined that

23 Defendants were wrongfully enjoined, moreover, the cost to covert the handicapped

24 parking space back to two non-handicapped parking spaces will be another $1,437.00.

25 *Id.*  At the very minimum, therefore, Defendants' damages for any wrongful enjoinment

26 is $2,874.00.

27        In addition, issuance of the injunction will not "merely" require

28 Defendants to "restore" a parking space which was already granted to Plaintiff, as

1   Plaintiff contends, since the evidence establishes that the HOA Board <u>never</u> authorized

2   the issuance of a reserved handicapped parking space for Plaintiff's exclusive use.  The

3   issuance of the injunction will cause additional damages, moreover, since the taking of

4   two Common Area Parking Spaces for Plaintiff's sole use will diminish the property

5   rights of <u>all the other homeowners</u> at Sunshine Village.

6          The facts and the law demonstrate that Plaintiff is not likely to prevail on

7   the merits of her claims.  Nonetheless, should it be determined at this stage that Plaintiff

8   is entitled to injunctive relief, Defendants are entitled to their right to a bond, and

9   should not be left without recourse if the injunction is later found to be wrongful.  Thus,

10  is this Court does see fit to issue a mandatory preliminary injunction, it should be

11  conditioned on the posting of a bond sufficient to cover Defendants' damages.

12                                    **V.**

13                              **CONCLUSION**

14          The requested injunction will not provide Plaintiff with a reasonable

15  accommodation that will afford her the equal opportunity to use and enjoy her home.

16  Instead, it will provide Plaintiff with preferential treatment at the expense of the

17  property rights held by others.  Such action is not supported by the law.  Therefore,

18  Plaintiff is <u>not</u> likely to prevail on the merits, and Defendants respectfully request that

19  the Court deny the Motion in its entirety.

20

21  DATED:  August 19, 2011                 COX, CASTLE & NICHOLSON LLP

22

23                                         By:_____/s/ Charles E. Noneman_____
                                               Charles E. Noneman
24                                             Attorneys for Defendants SUNSHINE
                                               VILLAGE HOMEOWNERS ASSOCIATION-
25                                             WALNUT, CHIN-YUH YANG, SUNG TIEN
                                               CORPORATION, doing business as STC
26                                             MANAGEMENT

27

28