1   David G. Geffen, Esq. (State Bar No. 129342)
    geffenlaw@aol.com
2   DAVID GEFFEN LAW FIRM
    530 Wilshire Boulevard, Suite 205
3   Santa Monica, CA 90401
    Telephone: (310) 434-1111
4   Facsimile: (310) 434-1115

5   Attorney for Plaintiff
    JENNIFER GARCIA

6

7

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  | JENNIFER GARCIA, an individual, | Case No. CV11 05033 DMG (MANx) |
    | | [Hon. Dolly M. Gee, Presiding] |
12  | Plaintiff, | |
13  | vs. | **PLAINTIFF'S REPLY TO** |
    | | **DEFENDANTS' OPPOSITION TO** |
14  | SUNSHINE VILLAGE HOMEOWNERS | **MOTION FOR A PRELIMINARY** |
    | ASSOCIATION-WALNUT, et al., | **INJUNCTION** |
15  | Defendants. | Date:           September 9, 2011 |
16  | | Time:              2:00 p.m. |
    | | Ctrm:                    7 |

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR A
PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................i

I.     Defendants' Propose No Accessible Accommodations......................2

II.    Defendants' Objections Are Unsupported and Plaintiff's Motion
       Should be Granted..................................................................6

III.   Plaintiff Should be Granted a Preliminary Injunction........................6

       A.     Plaintiff Meets Her Burden of Showing That Her Request
              Is Reasonable..................................................................7

              1.  Even if an Assigned Handicap Parking Space Near Her
                  Dwelling Might Result in Preferential Treatment Over Other
                  Non-Disabled Tenants, it is Not Unreasonable Under the FHAA
                  Standards..................................................................7

              2.  Plaintiff's Request for an Assigned Parking Space is
                  Reasonable Even Though She Owns a Garage....................10

              3.  Plaintiff's Request is Reasonable Even if it Diminishes
                  the Pool of Common Parking Spaces Available to Other
                  Residents..................................................................11

IV.    An Assigned Handicap Parking Space Near Plaintiff's
       Unit is Necessary Because it is Casually Linked to Her Disability
       And Likely to Afford Her Equal Opportunity to Use and Enjoy Her
       Dwelling.............................................................................12

       A.     Plaintiff's Need for an Assigned Handicap Parking Space Near
              Her Dwelling is Directly Related to Her Disability...................12

       B.     Plaintiff Needs This Accommodation Even if She Can Still
              Access Her Unit Without It...............................................13

V.     Refusal by Defendants to Accommodate Plaintiff's Reasonable and
       Necessary Request for an Assigned Handicap Parking Near Her

Dwelling Constitutes Threat of Immediate Irreparable Harm.................14

VI.    Any Inconvenience the Residents or Guests of Sunshine Village Might
       Encounter by Having Two Less Common Parking Spaces Available is Far
       Outweighed by the Enhanced Benefit to Plaintiff's Quality of Life
       From an Assigned Handicap Parking Space Near Her Home.............14

VII.   Requiring Plaintiff to Post Anything But a Nominal Bond Will Deny
       Plaintiff Access to This Equitable.............................15

VIII.  A Prohibitory Injunction is Necessary to Restore the Status Quo Prior
       To This Controversy; Plaintiff Meets the Standard for a Mandatory
       Injunction Too.............................................15

CONCLUSION.............................................................16

# TABLE OF AUTHORITIES

## CASES

PAGE

*Alliance for Wild Rockies v. Cottrell*
632 F.3d 1127, 1131 (9th Cir.2011) .................................................................... 6

*Anderson v. United States*
612 F.2d 1112, 1114 (9th Cir. 1979) .................................................................. 16

*Astralis Condominium Assn v. United States Dept. of HUD*
620 F.3d 62 (1st Cir. 2010) .......................................................................... 10, 11

*Barahona-Gomez v. Reno*
167 F.3d 1228, 1237 (9th Cir. 2004) .................................................................. 15

*Brantley v. Maxwell-Jolley.*
656 F.Supp. 2d 1161, 1178 (N.D. Cal. 2009) ..................................................... 15

*Bryant Woods Inn v. Howard County*
124 F.3d 597 (4th Cir 1997) ................................................................................ 9

*Chalk v. United States Dist. Ct. Dist. of Calif.*
804 F.2d 701, 704 1131 (9th Cir. 1988) ............................................................. 15

*Dahl v. Hem Pharmaceuticals Corp.*
7 F.3d 1399, 1403 (9th Cir. 1993) ..................................................................... 16

*Didian v. Village of Wilmette*
269 F.3d 831, 838 (7th Cir.) 2001) ................................................................ 1, 13

*Giebeler v. M & B Associates*
343 F.3d 1143, 1150 (9th Cir. 2003) ............................................................ 8, 9,12

**CASES** (continued)

*Heckler v. Lopez*
463 U.S. 1328, 104 S.Ct. 10 (1983) …………………………………………………………14

*Howard v. City of Beavercreek*
276 F.3d 802, 806 (6th Cir. 2002) ..................................................................................... 2

*Jankowski Lee & Associates v. Cisneros.*
91 F.3d 871, 783 (7th Cir. 1996) ..................................................................................... 11

*Lopez v. Heckler*
713 F.2d 1432, 1437 (9th Cir. 1983) ................................................................................ 14

*United States v. California Mobile Home Park*
29 F.3d, 1413, 1418 (9th Cir. 1994) ................................................................................. 8

*United States v. Nutri-cology, Inc.*
892 F.2d 394, 398 (9th Cir.1992) .................................................................................... 14

*U.S. Airways v. Barnett*
535 U.S. 391 (2002) ........................................................................................................... 7

*Vanguard v. City of Los Angeles*
060311 FED 9, 10-56635 (9th Cir. 2011) .......................................................................... 7

*Save Our Nonoran, Inc. F. Flowers*
408 F.3d 1113, 1126 (9th Cir. 2004) ............................................................................... 12

*Schwarz v. City of Treasure Island*
544 F.3d 1201,1226-1227 (11th Cir. 2008) ...................................................................... 13

*Silver Sage Partners v. City of Desert Springs*
251 F.3d 814, 827 (9th Cir. 2001) .................................................................................... 14

-ii-

**CASES** (continued)

*Sporn v. Ocean City Colony Condominium Assn.*
173, F.2d 244(D.N.J. 2001)................................................................................................ 8

*Vanguard v. City of Los Angeles*
060311 FED 9, 10-5663 (9th Cir. June 3, 2011)................................................................... 7

*Winter v. Natural Resources Defense Council, Inc.*
555 U.S. 7, 22; 129 S.Ct. 365 (2008) ................................................................................ 6

**STATUTES**

Cal. *Govt. Code* Sec. 12955.6 ............................................................................................ 7

**PUBLICATIONS**

American National Standards Institute (ANSI)............................................................. 1, 3,4

Fair Housing Accessibility Guidelines (HUD Guidelines) .............................................. 4,5

I.   **Defendants Propose No Accessible Accommodation**

In January of this year, after four years of FHAA compliance, Defendants removed Plaintiff's handicap parking space, a simple and inexpensive solution to Plaintiff's pressing needs that meets Defendants' legal requirement to accommodate her disability. This accommodation is "necessary" because it affirmatively enhances plaintiff's quality of life by ameliorating the effects of her disability. *Didian v. Village of Wilmette*, 269 F 3d 831, 838 (7th Cir. 2001) It is "reasonable" because it does not impose an undue financial or administrative burden on Defendants. *Howard v. City of Beavercreek,* 276 F.3d 802, 806 (6th Cir. 2002)

Defendants offer nothing in its place. Instead, Defendants argue that a handicap parking space is unnecessary because Plaintiff should use her garage. (Defendants' Brief (DB) p. 15, 22-28)

Telling Plaintiff to park in her garage is like telling Plaintiff to ignore her disability.

First, as Defendants well know, there are two steps from the garage up to the level of Plaintiff's house. This totals a 14 inch rise. (Garcia Decl. ¶ 1 , Exh. # 1)

FHA standards for accessible design and construction, like the ADA Accessibility Guidelines, are consistent with the standards published by the American National Standards Institute (ANSI). Congress, in the Fair Housing Act, specifically referenced the ANSI Standard, thereby encouraging utilization of the ANSI Standard as guidance for compliance with the Act's accessibility requirements.[1] ANSI identifies the standards for construction to meet the minimal needs of persons with disabilities. According to the ANSI Standard, to build an accessible ramp to span this rise would require a ramp 14 feet long.

ANSI 4.8.2 "Slope and Rise. The least possible slope shall be used for any ramp. The maximum slope of a ramp in new construction shall be 1:12."

---

[1] The Fair Housing Act Accessibility Guidelines are posted online at http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/disabilities/fhguidelines/fhefha1

- 2 -

1    Obviously, accepting Defendants' measurements as accurate, there is insufficient

2    space in the garage to build such a ramp and still park there. The entire garage measures

3    24 feet in length (Garcia Decl. ¶ 2, Exh. # 2.)

4    To bypass this problem, Defendants argue that the Plaintiff should exit through

5    the front of the garage which Defendants claim (without evidentiary support) is the

6    same path of travel that she would traverse from the handicap parking space. This is far

7    from true.

8    As the attached photo (Exh. # 3) of the front area of Plaintiff's garage shows,

9    exiting from the garage puts one directly in the path of cars in a two-lane public road.

10   One cannot see the approaching cars until outside the garage and in the lane of traffic.

11   (Garcia Decl. ¶ 3) Thus, there is no accessible path of travel from the garage (even if

12   defendants believe it's "close to her home as possible." (DB p. 3, 21-22)

13   Section 4 of the ANSI describes some of the elements of an accessible route:

14       ANSI 402.2 Components. Accessible routes shall consist of one or more of
         the following components: Walking surfaces with a slope not steeper than
15       1:20, doors and doorways, ramps, curb ramps excluding the flared sides,
         elevators, and platform lifts. All components of an accessible route shall
16       comply with the applicable portions of this standard.

17

18   Handicap parking spaces have specific dimensions and slopes and are connected

19   with an accessible path of travel.

20       ANSI 502 Parking Spaces
         502.1 General. Car and van parking spaces required to be accessible shall
21       comply with 502.

22
         502.2 Vehicle Spaces. Car and van parking spaces shall be 96 inches (2440
23       mm) wide minimum, shall be marked to define the width, and shall have
         an adjacent access aisle complying with 502.3.
24

25       502.3 Access Aisle. Access aisles serving parking spaces shall comply
26       with 502.3. Access aisles shall adjoin an accessible route.

27
         502.3.1 Width. Access aisles serving car parking spaces shall be 60 inches
28       (1525 mm) wide minimum. Access aisles serving van parking spaces shall

- 3 -

be 96 inches (2440 mm) wide minimum.

502.3.2 Length. Access aisles shall extend the full length of the parking spaces they serve.

502.3.3 Marking. Access aisles shall be marked so as to discourage parking in them.

503.3. Access aisles shall adjoin an accessible route.

The proposed garage parking is not on an accessible route.

This traffic lane is also not leveled. It has a 3% grade, and it slopes down to a center water gulley. When plaintiff is on this road, her wheelchair is pulled down to the center. (Garcia Decl. ¶ 3, Exh. # 2)

ANSI 403.3 Slope. The running slope of walking surfaces shall not be steeper than 1:20. The cross slope of a walking surface shall not be steeper than 1:48.

Since the maximum cross slope for an accessible route is 2% (1:48), Defendants' proposal is not ANSI compliant.

The Department of Housing and Urban Development published its final Fair Housing Accessibility Guidelines (HUD Guidelines) on March 6, 1991, to provide builders and developers guidance on how to comply with the accessibility requirements of the FHAA. 24 C.F.R. Ch. I, Subch. A., App. II. These guidelines define "accessible route" as follows:

"Accessible route" means a continuous unobstructed path connecting accessible elements and spaces in a building or within a site that can be negotiated by a person with a severe disability using a wheelchair, and that is also safe for and usable by people with other disabilities. Interior accessible routes may include corridors, floors, ramps, elevators and lifts. Exterior accessible routes may include parking access aisles, curb ramps, walks, ramps and lifts. (emphasis added)

Defendants' proposed alternative does not meet minimum standards of accessibility. Building a ramp over the steps that lead from the garage to the level of

- 4 -

1    Plaintiff's unit would require a space bigger than Plaintiff's entire garage, and even

2    then the slope would be greater than that allowed by ANSI standards. The accessible

3    route Defendants propose as an alternative is a lane of traffic that slopes to the center,

4    and clearly not a route that coincides with one for the general public.  Nor is it safe, as

5    required by the HUD Guidelines set out above. (Garcia Decl. ¶ 3)

6        Able-bodied residents can enter and exit their garages by going up the stairs and

7    through the door in the rear of their garage. Defendants propose that Plaintiff and her

8    children should exit blindly into a lane of traffic. (DB p. 17, 2-6)  Not only is it not an

9    accessible path of travel, it is not even a pedestrian walkway, nor is there signage which

10   would alert cars to look out for pedestrians. (Garcia Decl. ¶ 3, Exh. # 3)

11       Exiting a parking space directly into a traffic lane is clearly not part of an

12   accessible route to the building.

13       Using this lane of traffic as a path of travel also presents a serious risk of injury

14   to Plaintiff's minor autistic children.  Because of her disability, Plaintiff's and her

15   husband's ability to protect their minor children is substantially diminished, especially

16   at the crucial time when Plaintiff is being lifted in or out of or onto the family truck by

17   her husband.  Her youngest child is unable to fully appreciate the risk, and is likely to

18   dart out of the garage and into the lane of traffic.  He has repeatedly demonstrated a

19   tendency to run out of enclosed spaces in a matter of seconds. (Garcia Decl. ¶ 4)

20       Since 2007 when Plaintiffs younger son was only 3 years old, Plaintiff relied on

21   and used the handicap parking space that was taken away from her earlier this year.

22   (Garcia Decl. ¶ 5)

23       Defendants' argument that Plaintiff was never "formally granted" her assigned

24   handicap parking space and that it was instead "the result of an unapproved, unilateral

25   act of a rogue tyrannical president of the HOA Board of Directors", is over the top and

26   not supported by the facts. (DB p. 2, 27 – p. 3, 2) In at least two other occasions, the

27   Board approved the assignment of a handicap parking space to two other

28

- 5 -

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR A
PRELIMINARY INJUNCTION

1  tenants.[2]  As in these two other occasions, Plaintiff was granted her assigned parking

2  space because it was correctly determined by Defendant Sunshine's  Board at that time

3  that it was reasonable and necessary under the law to do so.

4  **II.   Defendants Objections Are Unsupported and Plaintiff's Motion Should Be**

5       **Granted**

6       Granting Plaintiff an assigned parking space near her dwelling is consistent the

7  FHAA's overall goal to afford disabled persons with an opportunity to equal use and

8  enjoyment of a dwelling of their choice, Plaintiff's requested accommodation is

9  reasonable and does not require tit-for-tat exchange as Defendants so erroneously

10  assert, and the accommodation is necessary because it is causally linked to Plaintiff's

11  disability and is likely to provide her with equal opportunity to use and enjoy her

12  dwelling.

13  **III.   Plaintiff Should be Granted a Preliminary Injunction**

14       Plaintiff's motion should be granted because she has shown 1) a likelihood she

15  will succeed on the merits of her FHAA and FEHA claims; 2) she is likely to suffer

16  irreparable harm in the absence of preliminary relief; 3) that the balance of hardships

17  tips in her favor; and 4) that the injunction sought is not contrary to the public interest.

18  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 375-

19  76 (2008).

20       In this circuit, the *Winter* elements are balanced and a strong showing of one

21  element can compensate for weaker showing of another, "For example, a stronger

22  showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of

23  success on the merits. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127,1131 (9th

24  Cir. 2011). (Holding that the "sliding scale" approach to preliminary injunctions

25  followed by 9th and other circuits survived the Supreme Court's rejection in *Winter*,

26  ───────────────
[2]  In July,16 2008, the Board approved the grant of an assigned handicap parking space to the

27  homeowner of unit 1615-F, Greencastle. (See minutes of Board for July 16, 2008 meeting, Garcia

   Decl. ¶ 6,  Exh. # 4). On August 19, 2009 the Board granted an assigned handicap parking space to a

28  resident of unit 1625-F, Greencastle. (Garcia Decl. ¶ 6, Exh. # 5)

- 6 -

1 | supra, that the possibility of irreparable harm was sufficient to justify a preliminary

2 | injunction.)

3 |     Defendants, however, ignore the clear and sound precedent of the 9th Circuit and

4 | instead argue, citing 1st circuit and Federal circuit case law, that Plaintiff's motion

5 | should be denied because "likelihood of success" must be proved to a much higher

6 | standard. (DB p. 9, 15-22)  In fact, when the merits and a balance of the hardships tips

7 | in favor of plaintiff, this can be enough to support issuance of an injunction, so long as

8 | the other elements of the *Winter* test are present. *Vanguard v. City of Los Angeles*,

9 | 060311 FED9, 10-56635 (9th Cir., June 03, 2011).

10 |     Plaintiff's request for an assigned handicap parking space near her dwelling is

11 | both reasonable and necessary, and thus she is very likely to succeed in her FHAA and

12 | FEHA claims.[3]

13 | A. Plaintiff Meets Her Burden of Showing that Her Request is Reasonable

14 |     Under the FHAA, a Plaintiff can meet her burden of proof that the requested

15 | accommodation is reasonable by either showing that such accommodation seems

16 | reasonable on its face, or by showing that it is reasonable on its particular facts.

17 | *Giebeler v. M & B Associates*, 343 F.3d 1143, 1156 (9th Cir. 2003).  Thus, in some

18 | circumstances it may be reasonable for certain defendants to provide an

19 | accommodation even if such accommodation is not reasonable in most cases. Id.

20 |     1.  Even if an Assigned Handicap Parking Space Near Her Dwelling

21 |        Might Result in Preferential Treatment Over Other Non-Disabled Tenants, it

22 |        is Not Unreasonable Under the FHAA Standards

23 |     An accommodation that may result in preferential treatment for a disabled tenant

24 | over other similarly situated non-disabled individuals is nonetheless reasonable under

25 | the FHAA. *Giebeler v. M & B Associates*, 343 F.3d 1143, 1150 (9th Cir. 2003)

26 | (adopting the holding in *U.S. Airways v. Barnett*, 535 U.S. 391 (2002), to FHAA

27 |

28 |

___

[3] The FEHA was intended to conform to the general requirements of the FHAA but may provide greater protection against discrimination. Cal. Govt. Code § 12955.6.

- 7 -

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR A
PRELIMINARY INJUNCTION

1  reasonable accommodation analysis, that an accommodation under the ADA might
2  indeed result in a preference in order to achieve the goal of equal opportunity). The
3  proper analysis for FHAA accommodations is whether they are necessary to afford
4  disabled persons an equal opportunity to use and enjoyment of a residence of their
5  choice. *Giebeler* at 1149.

6      Defendants' argument that Plaintiff's request for an assigned handicap parking
7  space near her dwelling is not reasonable under the FHAA because it gives her a
8  preference over other non-disabled residents is therefore not valid. (Defendants Brief
9  (DB) p.14, 16:19) In support of this misguided proposition Defendants cite many
10 district court cases from other circuits, but none from this circuit. However, even those
11 cases do not support Defendants' contention.

12     Defendants rely on a New Jersey district court case, *Sporn v. Ocean Colony*
13 *Condominium Ass'n*, 173 F.Supp.2d, 244 (D.N.J. Oct. 29, 2001), to argue that the
14 FHAA does not permit accommodations that provide disabled individuals with any
15 preference over non-disabled tenants. (DB p.12, 11-15) *Sporn* actually addresses
16 accommodations that go beyond affording a handicap tenant equal opportunity to use
17 and enjoy a dwelling. *Sporn* at 250 (citing *United States v. California Mobile Home*
18 *Park*, 29 F.3d 1413,1418 (9th Cir. 1994). It does not say that handicap tenants cannot
19 be treated with preference over other tenants if such preferential treatment is necessary
20 to allow a disabled tenant equal opportunity to use and enjoy a dwelling, as
21 acknowledged by *Giebeler,* supra.

22     *Sporn* is also factually distinct from our case in one crucial respect. In *Sporn* the
23 court found that Plaintiff's request was not reasonable because his stated explanation
24 for needing the assigned handicap parking space was to obtain extra parking for visiting
25 family members during the summer. Id at 250. Here, Plaintiff needs this assigned
26 handicap parking space because it affords her and her young autistic children an
27 accessible and safe location to load and unload their family truck and/or Access
28 Services when coming and going from daily activities. (Garcia Decl. ¶ 5)

- 8 -

1    Defendants cite *Bryant Woods Inn v. Howard County*, 124 F. 3d 597, (4th Cir.
2    1997). (DB p. 12, 13-18) *Bryant* holds that under the FHAA accommodations that give
3    greater benefit to disabled persons than nondisabled persons must be related to the
4    disabled person's handicap in order to be reasonable. Id at 604. Again this case does not
5    stand for the proposition, as argued by Defendants, that an accommodation is *per se*
6    unreasonable simply because it affords a disabled person some type of preference. In
7    fact, consistent with *Giebeler*, supra, *Bryant* acknowledges that what controls the
8    analysis is whether or not the accommodation affords "equal opportunity" under the
9    FHAA. *Bryant* at 604.

10    Case law of this circuit, and Defendants' own cited cases support the general
11    understanding that even accommodations that afford disabled persons with preferential
12    treatment are allowed under the FHAA, so long as such accommodation is reasonable
13    and necessary to afford the disabled individual equal opportunity to use and enjoy a
14    dwelling. Defendants confuse a reasonable accommodation that might include treating
15    a disabled individual with a preference but is nonetheless necessary to afford that
16    individual with an opportunity for equal use and enjoyment of a dwelling, with an
17    accommodation that is simply a request for preferential treatment.

18    Whereas non-disabled tenants of Sunshine Village can come and go from their
19    homes without a second thought, Plaintiff, because of her disability cannot do so.
20    Granting Plaintiff an assigned handicap parking space near her dwelling will help
21    provide Plaintiff an equal opportunity to use and enjoy her dwelling as other non-
22    disabled residents.

23    If Plaintiff is granted an assigned a handicap parking space like the one she had
24    from 2007 to January 2011, her ease of access to her home is greatly increased, while
25    the risk of injury to her and minor children is significantly lowered. Plaintiff would not
26    have to roll her wheelchair right into and along the lane of traffic to get to her dwelling
27    as she would have to if she tried use the garage. The assigned parking space she seeks
28    allows plaintiff to roll around the family truck and on the path of travel to her unit

- 9 -

1   without actually being in the lane of traffic. (Garcia Decl. ¶5)

2          She would have a clear view of any vehicle coming in her direction. Drivers

3   would also have a much better opportunity to see Plaintiff and her children and slow

4   down.

5          Thus, because the accommodation Plaintiff seeks is crucial for her access to her

6   home and safety, and the safety of her minor children, it is not invalid under the FHAA

7   even if it gives Plaintiff some preference, as Defendants disingenuously argue.

8          2.   Plaintiff's Request for an Assigned Parking Space is Reasonable Even

9               Though She Owns a Garage

10         To determine if an accommodation under the FHAA is reasonable requires close

11  examination of the facts of the particular case. *United States v. California Mobile Home*

12  *Park Management Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994).

13         Defendants' tit for tat interpretation of reasonableness under the FHAA is not

14  supported. Defendants argue that an assigned handicap parking space is a reasonable

15  accommodation only if, as in *Astralis Condominium Assn v. Secretary, United States*

16  *Dept. of HUD,* 620 F.3d 62 (1st Cir. 2010), Plaintiff exchanges another parking space in

17  return. (DB p. 14, 1-2) This rigid interpretation of the FHAA is contrary to case law of

18  this circuit.

19         In *Astralis*, the dicta that Defendants rely on  (i.e. "provided, however, that they

20  agree to surrender their original assigned spaces") came in the context of summarizing

21  what the ALJ ordered, and was not relied upon in upholding the ALJ's decision. Id at

22  65. In fact, there is no mention of it in the court's analysis. Actually, the court found the

23  ALJ's order, granting Plaintiff exclusive use of two handicap parking spaces,

24  reasonable and necessary under the FHAA, since it mirrored the example by HUD. Id at

25  69.

26         The facts here also support granting Plaintiff an assigned handicap parking space

27  close to her unit, even though she owns a garage. As explained above, even if Plaintiff

28  could load and unload her husband's truck inside the garage, the path of travel does not

- 10 -

1  comply with minimum accessibility standards and  poses a real threat of serious
2  physical injury to her and her minor children.

3        Unlike in *Astralis*, it would be impractical for Plaintiff to give up her garage in
4  order to get an assigned parking space. In *Astalis*, Plaintiffs had been granted an
5  assigned parking space from the common spaces but they were too far from their unit. It
6  was only reasonable to require them to give up these spaces if they were going to be
7  given other closer spaces. Here, Plaintiff's garage is part of her property. It is not a
8  parking space from the common pool previously granted to her. Requiring her to forfeit
9  part of her real property to obtain this reasonable accommodation would be impractical
10  and unjust. It is also not required by law as Defendants argue.

11        3.  Plaintiff's Request is Reasonable Even if it Diminishes the Pool of
12             Common Parking Spaces Available to Other Residents

13        Defendants attempt to distinguish *Jankowski Lee & Associates v. Cisneros*, 91
14  F.3d 871 (7th Cir. 1996), on grounds that Plaintiff's request is unreasonable because it
15  might diminish the pool of open parking spaces available to non-disabled residents (DB
16  p. 14, 23-28) is just another attempt to restrain the "reasonableness" analysis of the
17  FHAA with rigid rules.

18        As discussed above, the proper analysis for whether an accommodation is
19  reasonable is fact specific and not dependent on some numeric formula as Defendants
20  argue. *Mobile Home Park Management Co.*, 29 F.3d at 1418,  (DB p.14, 23-28)

21        Defendants conveniently misinterpret *Jankowski*. Granting that plaintiff an
22  assigned handicap parking space near his home actually diminished the number of open
23  spaces for other non-disabled residents by six. Id at 895. Nonetheless, the court upheld
24  the ALJ's order granting plaintiff an assigned handicap parking space because such
25  accommodation was reasonable. Id 897. The court affirmed the ALJ's order even
26  though it noted that defendant had doubled the number of unassigned handicap parking
27  spaces near the Plaintiff's unit because, according to the court, "Petitioners cannot
28  prevail on this issue because Petitioners' action still falls short of providing a

- 11 -

1   "reasonable accommodation.'" Id at 895.

2        Defendants offer no accommodation here, let alone a reasonable one.

3   **IV.   An Assigned Handicap Parking Space Near Plaintiff's Unit is Necessary**

4        **Because it is Causally Linked to Her Disability and Likely to Afford Her**

5        **Equal Opportunity to Use and Enjoy Her Dwelling**

6        To prove that an accommodation under the FHAA is "necessary" a plaintiff need

7   only show a causal link between the defendant's conduct or policy and the plaintiff's

8   injury, and that the accommodation is "possibly necessary to afford plaintiff equal

9   opportunity to use and enjoy a dwelling." *Giebeler,* 343 F.3d at 1155. Thus,

10  Defendants' obligation to provide reasonable modifications is limited to a modification

11  that "addresses a need created by the handicap" rather than a need caused by a

12  condition shared by individuals without disabilities. *Schwarz* v. *City of Treasure Island,*

13  *544 F.3d 1201, 1226-1227* (11th Cir. 2008).

14  A. Plaintiff's Need for an Assigned Handicap Parking Space Near Her Dwelling is

15      Directly Related to Her Disability

16      The causal link in this case is clearly met. Plaintiff needs a handicap space near her

17  home because she relies on a wheelchair for mobility forcing her to depend on her

18  husband and Access Services to get to and from daily living activities.

19      In *Giebeler,* a disabled plaintiff sought waiver of a no-cosigner policy by the

20  defendant as a reasonable accommodation necessary to afford him equal opportunity to

21  obtain and enjoy an apartment of his choosing. Id at 1145-46. Because of his disability,

22  plaintiff did not earn enough money and thus did not qualify to rent the apartment, but

23  his mother offered to co-sign the lease. Id.  Defendant, however, refused to make an

24  exception to its no-cosigner policy. Id. In finding the accommodation necessary for

25  plaintiff, the court held:

26          Here, the causal link between Branham's failure to accommodate and Giebeler's
27          disability is obvious. Giebeler was unemployed because of his disability and
28          therefore had insufficient income to qualify for the apartment. Once Branham

- 12 -

refused to allow Anne Giebeler to rent an apartment for her son to live in, Giebeler could not show financial ability to pay the rent and therefore could not live in the housing complex. Allowing Anne Giebeler to rent an apartment on her son's behalf, or in some other manner accommodating his inability to prove financial responsibility in the usual way, was necessary to enable Giebeler to live in an apartment at Branham. Id at 1156.

Here, Plaintiff's disability combined with the lack of accessible parking limits her equal use and enjoyment of her dwelling. Without this handicap parking space, Plaintiff cannot come and go from daily living activities without extreme effort and risk to her safety. Parking inside the garage and using the lane of traffic as a path of travel to her unit as Defendants suggest, presents a real risk of serious injury to Plaintiff and her children.

Thus, Plaintiff's requested accommodation is directly linked to her disability and is thus necessary.

B. Plaintiff Needs This Accommodation Even if She Still Has Limited Access to Her Unit Without It.

Plaintiff does not need to prove that her requested accommodation is absolutely necessary to afford her use of her dwelling as Defendants argue. (DB p. 15, 26-28) As stated above, Plaintiff need only show that her requested accommodation is "likely necessary" to afford her an equal chance to use and enjoy her dwelling. *Giebeler* supra.

"Whether the requested accommodation is necessary requires a showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Didian v. Village of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001).

Here, Defendants argue that Plaintiff's request is not necessary because Plaintiff has a garage that is next to the handicap parking space that was taken away (DB p. 15, 22-28). As Plaintiffs declaration attests, allowing her this modest and reasonable request goes far to enhance her quality of life, and does not simply satisfy a desire for convenience as agued by Defendants.

- 13 -

1  **V.   Refusal by Defendants to Accommodate Plaintiff's Reasonable and**

2  **Necessary Request for an Assigned Handicap Parking Space Near Her**

3  **Dwelling Constitutes Threat of Immediate Irreparable Harm**

4  The Ninth Circuit presumes irreparable harm if Plaintiff shows a likelihood of

5  success for a violation of a civil rights statute. *Silver Sage Partners v. City of Desert*

6  *Springs*, 251 F.3d 814, 827 (9th Cir. 2001). See also, *United States v. Nutri-cology, Inc.*,

7  892 F.2d 394, 398 (9th Cir. 1992).

8  The Court in this case should presume Plaintiff is likely to suffer irreparable

9  harm since Plaintiff has met her burden of proving that she is likely to succeed on the

10  merits of her FHAA and FEHA claims.

11  Defendants try to divert attention from this very straight forward analysis and

12  instead focus on Plaintiff's allegations of past retaliation and harassment by Defendant

13  Yang, ignoring Defendants' blatantly illegal refusal to reinstate Plaintiff's assigned

14  handicap parking space near her dwelling.

15  **VI.   Any Inconvenience the Residents or Guests of Sunshine Village Might**

16  **Encounter by Having Two Less Common Parking Spaces Available is Far**

17  **Outweighed by the Enhanced  Benefit to Plaintiff's Quality of Life From an**

18  **Assigned Handicap Parking Space Near Her Home**

19  When faced with a conflict between material concerns and preventable human

20  suffering, there is little difficulty concluding that balance of the hardships tips clearly in

21  the Plaintiff's favor. *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983), reversed in

22  part on other grounds in, *Hecker v. Lopez*, 463 U.S. 1328, 104 S. Ct. 10, 77 L. Ed. 2d

23  1431 (1983).

24  Here, without an assigned handicap parking space Plaintiff struggles to access

25  her home and fears for her safety and the safety of her minor children.  This has taken

26  and continues on take significant psychological and emotional toll to Plaintiff, since

27  Defendants reconverted her assigned handicap parking space back to a regular space in

28  January 2011. (Garcia Decl. ¶5) Defendants argue that Plaintiff should not be granted

- 14 -

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR A
PRELIMINARY INJUNCTION

1  this relief because it would result in "…taking away two Common Area Parking Spaces
2  that would otherwise be available for residents and guests…" (DB p. 18, 15:16) This
3  inconvenience pales in comparison to the benefit granting this injunction will bring to
4  Plaintiff. Having her own handicap parking space greatly enhances the quality of
5  Plaintiff's life. The balance of the equities tips sharply in Plaintiff's favor.

6  **VII.  Requiring Plaintiff to Post Anything but a Nominal Bond Will Deny Plaintiff**
7  **Access to this Equitable Remedy**

8  Courts in this circuit have discretion to issue an injunction without requiring a
9  bond from Plaintiff. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (167 F.3d 1228,
10  1237 (9th Cir. 1999); see also *Save Our Nonoran, Inc. v. Flowers*, 408 F.3d 1113,1126
11  (9th Cir. 2004); *Brantley v. Maxwell-Jolley*, 656 F.Supp. 2d 1161, 1178 (N.D. Cal.
12  2009) (waiving a bond for plaintiff seeking a preliminary injunction under the ADA
13  because otherwise plaintiff would be denied access to the court).

14  Plaintiff is a full time mom with a disability. She and her two young children
15  depend month to month on her husband who works only about 30 hours per week as a
16  custodian and makes a modest wage. (Garcia Decl. ¶ 7) Requiring Plaintiff to post even
17  a small sum, not to mention thousands of dollars as demanded by Defendants (DB p.19,
18  17-26), would effectively shut the door of this relief to Plaintiff.

19  The Court should exercise its discretion to not require Plaintiff to post a bond.

20  **VIII.  A Prohibitory Injunction is Necessary to Restore the Status Quo Prior to**
21  **This Controversy; Plaintiff Meets the Standard for a Mandatory  Injunction**
22  **Too**

23  Granting Plaintiff this relief will simply restore the *status quo of* prior to January
24  2011, before Defendants reconverted Plaintiff's assigned handicap parking space. Thus,
25  this remedy should be construed by the Court as prohibitory instead of mandatory. *See*
26  *Chalk v. United States Dist. Ct. Dist. of Calif.*, 804 F.2d 701,704 (9th Cir. 1988).

27  Defendants argue this Court should construe this remedy as mandatory because
28  the status quo prior to this controversy was before Plaintiff was granted her assigned

- 15 -

1   parking space in 2007. (DB p. 10, 24-28)Defendants' argument is lacking. If

2   Defendants had not taken away Plaintiffs assigned handicap parking space in January,

3   2011, Plaintiff would not have filed this claim and thus this controversy would not have

4   arisen.

5    However, even if the Court finds the remedy here sought as mandatory, it should

6   nonetheless grant it since, as set out above, the facts and the law in this case clearly

7   favor Plaintiff. *See Dahl v. Hem Pharmaceuticals Corp.*, 7 F.3d 1399,1403 (9th Cir.

8   1993); *Anderson v. United States*, 612 F.2d 1112,1114 (9th Cir. 1979)

9

10   **CONCLUSION**

11    For all the reasons stated above, Plaintiff respectfully asks that the Court

12   disregard Defendants' arguments and grant her motion.

13

14   DATED:  August _____, 2011   DAVID GEFFEN LAW FIRM

15

16           By:_____

17            David G. Geffen, Attorney for Plaintiff

         JENNIFER GARCIA

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR A
PRELIMINARY INJUNCTION

# EXHIBIT 1







# EXHIBIT 2







# EXHIBIT 3

4ourbath.net new4ourbath.net new4ourbath.net new4ourbath.net new4ourbath.net new4ourbath.net new4ourbath.net new4ourbat

4ourbath.net new4ourbath.net new4ourbath.net new4ourbath.net new4ourbath.net new4ourbath.net new4ourbath.net new4ourbat



Jeniffer Garcia
5 Greencastle unit A
and Heights CA. 91748
6) 581-3659

Driveway angle, slope, Degree.

From: Martin Vega
General Contractor
793150
868 N. Maple Ave. Montebello CA. 90640
(323) 528-3598 Aug 27,2011

Concrete
Slab & Footing

Earth

Flat Roll Roofing

88"

84"
Garage
Door

177"

Concrete &
Asphalt Drive Way

From front of garage door to
center of driveway valley there
is a 6 1/2" drop.
Approximate 2.1 degrees slope

# EXHIBIT 4

# SUNSHINE VILLAGE HOA BOARD MEETING

Meeting Date: 16July2008
Meeting Time: 7:00 PM

The meeting came to order at 7:04 pm on 16July2008

## ATTENDEES

Charles

Joe

Jesse ✱

Sherri

Arthur

CMC Rep.: Tori Rios

## HOMEOWNERS/TENENTS ATTENDEES

| *1655-A Greencastle* | *1601-A Greencastle* |
|---|---|
| *1615-F Greencastle* | |
| | |

## SVHOA - WORKERS

| *None* | |
|---|---|

## 1655-A Greencastle

The homeowner has requested that the board of director have the homeowner's session outside to meet their needs. Sherri motioned to have them either in the pool area or in the bbq area. Joe seconded, Arthur and Charles agreed.

## 1601-A Greencastle

The homeowner has requested that the board of director approve her boarder around her front door; Sherri motioned to step aside and let the remaining board members review and handle this matter. The homeowner also wanted to the board to know that kittens have been getting into her unit through the dryer vent of her unit. The board informed her that the vent is the homeowner's responsibility and not the board of directors.

## 1615-F Greencastle

The homeowner complained about the parking situation and that there needs to be another handicap parking spot near their unit. Sherri requested information from the homeowner at 1655-A Greencastle asking if it is required to have the second part with the stripes for the handicap parking and Mrs. Garcia stated no only for those whom need it. Sherri motioned that we make one individual parking stall near this homeowner's request, Charles seconded and remaining board members agreed.
Also the homeowner would like the gardeners to fix the sprinklers near their door so that it does not hit the door and the one that is near the parking stall at 1625-A Greencastle be fixed so it does not hit the vehicle. Tori and Sherri to talk with Brooker.

## Adjourn

Sherri Lee motioned that we adjourn the board meeting at 7:58 pm Arthur seconded, Joe and Charles agreed.

Page 1 of 1

# EXHIBIT 5

**SUNSHINE VILLAGE HOA BOARD MEETING**

Meeting Date: 19Aug2009
Meeting Time: 7:05 PM

Sherri Lee motioned to call the meeting to order at 7:05 pm on 19Aug2009; Arthur seconded it and all other board members agreed. This portion of the meeting is held outside in the pool area for the handicap homeowners.

**ATTENDEES**

Jesse                          Sherri
Charles                        Joe
                               CMC Rep.: Travis Alexandar

**NON-ATTENDEES**

Arthur -- Mother in the Hospital

**HOMEOWNERS/TENENTS ATTENDEES**

| 1625-F Greencastle Ave | 1600-A Greencastle |
|---|---|
| 1615-F Greencastle | |

## *HOMEOWNERS SESSION*

1625-F Greencastle – Sherri Lee has requested that we have an assigned handicap parking spot for her son (Jason Lee). Charles asked Travis do we have to have at least one handicap parking stall of anyone and everyone? If so, then Sherri Lee suggested the parking stall behind her unit at 1625-F Greencastle to be for her handicap son only. The Charles motioned for approval and the rest of the board agreed.

1600-A Greencastle brought to the attention that Dr. Yang came to her house at 10:00 pm and was upset her that he would make such statements. She was on the board years ago and knows that the association management firm is the one that handles all of the booking keeping and that we can not in any manner take money on our own. She suggested that we make sure our attorney gets a copy of this letter and handle it immediately. Sherri motioned for approval and all of the board members agreed.

Sherri addressed the issues that 1655-A Greencastle brought last month that needed work in the complex on:

- Drains in front of the complex are plugged and needs the lids replaced -- is scheduled and will be completed by Sept 30, 2009.
- Tennis Court Lights - Completed
- Pool Permits are not on file with Los Angeles pool inspection – Everything is with the county at this time.
- Bug/Spider Spraying, can we get the playground and pool area sprayed - Completed
- Community Watch – we should consider a neighborhood watch system or a security guard – Picked up information for share with the board of directors.
- Sprinklers in front of 1675 and side of 1655 Greencastle are not working – main system was out and has been replaced – Brooker apologized for not seeing to this matter earlier.

Call for Candidates was submitted to all homeowners.

## *EXECUTIVE DISCUSSION*

Page 1 of 7